IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

AUGUST 1996 SESSION


| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 02C01-9508-CC-00213 |
| | * | |
| Appellee, | * | DYER COUNTY |
| VS. | * | |
| | * | Hon. Joe G. Riley, Judge |
| GARY LYNN SYKES, | * | |
| | * | (Aggravated Assault) |
| Appellant. | * | |
| | * | |

**FILED**

**March 27, 2008**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**


For Appellant:

G. Stephen Davis
District Public Defender
208 N. Mill Avenue
P.O. Box 742
Dyersburg, TN 38025-0742

For Appellee:

Charles W. Burson
Attorney General & Reporter

Sarah M. Branch
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

James E. Lanier
Assistant District Attorney General
P. O. Box E
Dyersburg, TN 38024


OPINION FILED: _____


AFFIRMED


GARY R. WADE, JUDGE

## OPINION

At the conclusion of a bench trial, the defendant, Gary Lynn Sykes, was convicted of aggravated assault. The trial court required restitution of $4,421.00 and imposed a Range I, three-year sentence in the Dyer County jail; all but sixty days were suspended. In his appeal of right, the defendant challenges the sufficiency of the evidence. We affirm.

On August 6, 1994, the defendant and his wife Ida (the victim) began to argue as they were driving to a fish fry. The defendant refused to transport the victim to her mother-in-law's house. When the defendant stopped at a red light, the victim got out of the vehicle. The defendant then parked his vehicle and began to push, punch and kick the victim.

An eye-witness to the incident, Glenn Thompson, testified that he saw the truck driven by the defendant drive off the roadway and down an embankment. Thompson saw the defendant step out of the truck, grab the victim by the throat, and throw her violently against the front of his truck. Thompson believed the victim had been injured by the way she was standing and holding her arms. He next saw the defendant throw the victim to the ground and punch her several times. Thompson contacted the police.

Dr. Scott Kelly, an emergency-room physician, treated the victim. He testified that her face and neck were swollen and marked and that she had numerous contusions. He described the neck injuries as consistent with strangulation and feared the swelling might affect her breathing. The victim's fifth and sixth ribs were fractured. Dr. Kelly testified that the victim's injuries were potentially life-threatening.

2

Officer Bobby Waller, who was first on the scene, saw the defendant standing over the victim.  The defendant, who smelled of alcohol, explained that there was "just a little misunderstanding."  The victim, who was crying, claimed that the defendant had hit her.

The victim testified that the defendant, in a fit of jealously, had made several hateful comments on their way to a fish fry.  She stated that she got out of the truck at a red light and began to walk back to town when the defendant refused to return her to his mother's residence.  She claimed that he made a u-turn, drove down an embankment, and cut her off with his truck.[1]  She testified that the defendant grabbed her by her shirt collar, choked her,  threw her against the front of the truck, and then to the ground.  She recalled that the defendant cursed and beat her in the face as she pleaded with him to stop; Officer Waller arrived just as the defendant threatened to "kick her face in."  Because of her injuries, the victim was unable to sleep, sit, or move comfortably for two months.  She stated that her doctor did not permit her to return to work for three months.

The victim admitted, on cross-examination, that the defendant had threatened her in the past.  She said that when he was drinking, he would become violent.  She stated that two weeks before the assault the defendant had threatened her daughter.  She acknowledged that during the three months they were married, the defendant would, at times, go stay with his ex-wife or his mother.

The defendant, whose blood alcohol level was .11% shortly after his

---

[1]The defendant was also indicted for aggravated assault for grazing the victim with the truck, but this count was dismissed.

arrest, testified that the victim was mad because his ex-wife called just before they left for the fish fry. He claimed that she tried to get out of his truck while it was going 55 miles an hour.

The defendant acknowledged that he was angry when the victim left the truck and conceded that he followed her. He claimed that he stopped the truck about twenty feet away from the victim, and that he grabbed her by the shirt collar in order to keep her from walking away. He admitted that he pushed the victim against the front of his truck but denied kicking or intending to hurt the victim.

The defendant offered several explanations for the victim's broken ribs and extensive bruises on her neck. He theorized that her ribs were broken when she jumped out of the truck at the red light and turned to slam the door. He suggested that when the police car arrived, the victim might have been injured when she fell backwards.

While admitting that he lost his temper and choked the victim, the defendant contended that the swelling in her neck was related to a work injury and had occurred on two other occasions.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the trier of fact. See Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light

4

most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R. App. P. 13(e).

An assault is committed when a person "[i]ntentionally, knowingly or recklessly causes bodily injury to another." Tenn. Code Ann. § 39-13-101. The assault becomes aggravated when, among other things, the victim suffers "serious bodily injury" defined as injury causing "[p]rotracted loss or substantial impairment of a function of a bodily member [or] organ" or "[e]xtreme physical pain." Tenn. Code Ann. §§ 39-13-102(a)(1), 39-11-106(33).

That there was an assault was almost uncontested. The victim testified that she was in extreme pain for about six weeks; she could not sit, stand, or lie in a comfortable position. Her pain medication, she said, did not relieve her suffering. She was unable to do simple tasks for about six weeks and was entirely dependent on her son. She could not return to work until three months after the assault.

The trial court found the defendant guilty of aggravated assault. Implicit in this finding is the finding that the victim suffered seriously bodily injury. Viewed in the light most favorable to the state, the evidence is sufficient to support a conviction. A rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Judge

5

CONCUR:


_____
William M. Barker, Judge


_____
Jerry L. Smith, Judge